## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOLLI CARTER, on her own behalf and as a Parent and Natural Guardian of J.C., a Minor 16 Carmen Drive Cape May, NJ 08210 | Civil Action No. _____ |
| | **(Formerly Case ID No. 220302588, Court of Common Pleas Philadelphia County)** |
| Plaintiffs, | |
| v. | |
| MEAD JOHNSON & COMPANY, LLC Illinois Corporation Service Co. 801 Adlai Stevenson Drive Springfield, IL 62703 | |
| MEAD JOHNSON NUTRITION COMPANY Illinois Corporation Service Co. 801 Adlai Stevenson Drive Springfield, IL 62703 | |
| ABBOTT LABORATORIES CT Corporation System 208 So. Lasalle Street, Suite 814 Chicago, IL 60604 | |
| THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL 3400 Civic Center Blvd. Philadelphia, PA 19104 | |
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE 133 South 36th Street Philadelphia, PA 19104 | |
| Defendants. | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446,

Defendant Abbott Laboratories ("Abbott") hereby removes the above-captioned action from the First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia County, Case ID No. 220302588, to the United States District Court for the Eastern District of Pennsylvania. Abbott provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

## NATURE OF REMOVED ACTION

1.     On March 24, 2022, Plaintiff filed this action in the First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia County, Case ID No. 220302588.

2.     Plaintiff's filing of this action follows more than 300 other individuals who have filed similar lawsuits across the country in recent months. These cases are about infants who were born too early—before 37 weeks of gestation—and developed necrotizing enterocolitis ("NEC"), an umbrella term for a disease of the gastrointestinal tract that occurs in premature infants. NEC's causes are both complex and multifactorial, meaning that it has many known contributing factors. Among these many risk factors, there are only two reliable prognostic parameters: gestational age and birth weight. The younger the infant's gestational age and the less an infant weighs, the greater the risk that the infant will develop NEC.

3.     These cases target a series of specialized formula and fortifier nutrition products that contain cow's milk protein. These products are designed and sold specifically for premature infants, who suffer from a host of medical issues relating to low birthweight and underdevelopment, regardless of what nutrition is administered.

4.     Infants who are born prematurely, at a low birth weight, and small for their gestational age, have underdeveloped or maldeveloped gastrointestinal systems that are simply not prepared to receive nutrition outside the womb. As a result, highly specialized medical professionals must make sophisticated judgments about the substance, quantity, timing, and

method of administration when providing nutrition to these fragile infants. A team of NICU physicians and specialists continuously monitors premature infants for early signs of NEC (among the many other things that can go wrong). They do so regardless of how nutrition is administered, and regardless of whether it consists of the mother's own milk, human donor milk, specialized formula or fortifier, or a combination. Each of these lawsuits alleges that the use of Abbott's and/or Mead Johnson's specialized preterm infant nutrition products caused an infant's NEC because the products are derived from cow's milk. The evidence will show that there is no basis for these allegations. These products are safe and save lives. Without them, many more infants would die or suffer serious setbacks, or face lifelong impairment.

5.      Like those other actions, Plaintiff asserts product liability claims arising from the administration of Abbott's and/or Mead Johnson's specialized preterm infant formula and/or human milk fortifiers, which Plaintiff alleges caused her premature infant to develop NEC. Plaintiff asserts the following causes of action ("COAs") against Abbott and Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition Company ("Mead Johnson"): (1) strict liability for design defect ("Count I"); (2) strict liability for failure to warn ("Count II"); (3) negligence ("Count III"); (4) intentional misrepresentation ("Count IV"); and (5) negligent misrepresentation ("Count V").

6.      Unlike most of the lawsuits that preceded this one, however, Plaintiff in this case also asserts two causes of action against hospital defendants—namely, The Pennsylvania Hospital of The University of Pennsylvania Health System d/b/a Pennsylvania Hospital ("Pennsylvania Hospital")[1] and The Trustees of the University of Pennsylvania d/b/a Penn Medicine, ("Penn

---

[1] Pennsylvania Hospital argues that even if Plaintiff "had a viable corporate negligence claim against Pennsylvania Hospital, any such claim is precluded against the Trustees of the University of Pennsylvania d/b/a Penn Medicine since it is not a hospital." (Hospital Defendants' Preliminary Objections ¶ 45.) We agree that if

Medicine") (collectively, the "Hospital Defendants"). Plaintiff's claims against the Hospital Defendants are for: (1) negligent failure to warn ("Count VI"); and (2) negligent corporate liability of health-care provider ("Count VII").[2]

7.      The Hospital Defendants are citizens of Pennsylvania and, while they are diverse from Plaintiff, their citizenship as in-forum defendants should be disregarded.

8.      Notwithstanding Plaintiff's inclusion of the Hospital Defendants, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Abbott has satisfied the procedural requirements for removal and this Court has subject matter pursuant to 28 U.S.C. § 1332.

9.      As explained in detail below, Plaintiff improperly joined the Hospital Defendants in this case.

10.     Nearly all of the hundreds of plaintiffs who have filed similar product liability cases relating to specialized preterm infant formula and fortifier product have asserted claims against the manufacturers alone—not any hospitals or medical providers—and there are sound reasons for this. Indeed, the Pennsylvania residents who filed in Illinois state court, represented by the same plaintiffs' counsel here, did not include any claims against the hospitals or medical providers.[3]

---

Pennsylvania Hospital is not considered a hospital, it does not owe any of the duties outlined in *Thompson v. Nason Hospital*, 527 Pa. 330, 591 A.2d 703 (1991), and no claim may be brought against it under the theory of corporate liability. *See infra* ¶ 36 *et seq.*

[2] The Hospital Defendants have filed Preliminary Objections in state court, objecting to both causes of action advanced by Plaintiff against them. *See* Ex. A-4. The Hospital Defendants object to these causes of action on the grounds that Abbott and Mead Johnson's products are not unreasonably dangerous and that a cause of action for corporate liability of a healthcare provider fails because Pennsylvania law requires more than a mere act of negligence for liability to attach to a hospital. *Id.* at 3, 9. The Hospital Defendants also have moved to strike Plaintiff's Complaint for lack of specificity. *Id.* at 11.

[3] Plaintiff's counsel's decision to exclude local hospitals from the Illinois cases, and the demonstrated ability of those suits to proceed without them, undermines any forthcoming argument that they are necessary or indispensable parties.

11.     As plaintiffs filed cases in jurisdictions all over the country, Abbott requested multidistrict consolidation to efficiently litigate these cases and safeguard the standard of care practiced in NICUs around the country. In an attempt to escape an orderly process, Plaintiff's counsel began filing cases in state court, naming hospitals as co-defendants, despite the clear bar against doing so.

12.     On April 8, 2022, the United States Judicial Panel for Multidistrict Litigation ("JPML") established a Multi-District Litigation ("MDL) for such claims against Abbott and Mead Johnson pending in federal courts nationwide. *See In re Preterm Infant Nutrition Prods. Liab. Litig.,* MDL No. 3026, Dkt. 119 (Apr. 8, 2022 Order). More than a dozen law firms represent those plaintiffs across the country, some of which are leading the MDL and Illinois litigations. And while Plaintiff's counsel here has filed cases in other jurisdictions, they have not gained a leadership position in those other proceedings.

13.     In an apparent attempt to secure a leadership role in this nationwide litigation, Plaintiff's counsel is now attempting to assert claims against the involved hospitals to prevent removal and transfer to the Preterm Infant Nutrition Products MDL. In the past several weeks, Plaintiff's counsel has filed nine lawsuits in California on behalf of twenty-five plaintiffs, and twenty-nine lawsuits in Pennsylvania on behalf of twenty-nine plaintiffs. In all of these lawsuits, Plaintiff's counsel has named as defendants the manufacturers and ***also the hospitals*** in which the premature infants were born and/or received medical treatment. Had these cases been filed against only the product manufacturers (like the others), they would be readily removed and transferred to the MDL—where Plaintiff's counsel has no leadership role. This gamesmanship should not be tolerated.

14.     Having removed this action, Abbott shall promptly request that the JPML transfer this action to the Preterm Infant Nutrition Products MDL pursuant to the "tag-along" procedure contained in the JPML Rules and the Case Management Order entered by the Northern District of Illinois on April 26, 2022. In addition, Abbott will seek a stay of these proceedings in the interest of judicial efficiency and consistency so that the MDL can address future motions, if any.[4]

## I.   ABBOTT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

15.     In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders which have been filed in the underlying matter are attached as **Exhibit A**. A copy of the State docket, showing all filings and activity to date, is attached as **Exhibit B**.

16.     Promptly following the filing of this Notice of Removal, written notice of the removal of this action will be served on all parties' counsel, as required by 28 U.S.C. § 1446(d).

17.     A true and correct copy of this Notice of Removal will also be promptly filed with the Court of Common Pleas, Philadelphia County, pursuant to 28 U.S.C. § 1446(d).

18.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action in which the properly joined parties are citizens of different states and the amount in controversy exceeds the sum of $75,000 for Plaintiff's claims, exclusive of costs and interest.

19.     Venue for this action is proper in this Court under 28 U.S.C. § 1441(a) because Philadelphia County is located within the United States District Court for the Eastern District of Pennsylvania (28 U.S.C. § 118(a)).

---

[4] In recent filings in the United States District Court for the Northern District of California, Plaintiff's counsel has sought expedited briefing on their Motions to Remand, maligning the JPML's selected MDL judge, Chief Judge Rebecca R. Pallmeyer, as somehow incapable or unable to render these decisions—an attack on this esteemed member of the judiciary that is unsupported and outlandish.

20.     Plaintiff filed this action in state court on or about March 24, 2022. Abbott's registered agent was served with the Complaint on or about April 13, 2022. Mead Johnson, which was served on or about April 15, 2022, has consented to removal. No consent for removal from the Hospital Defendants is required because, as set forth below, they are not properly joined. *See* 28 U.S.C. § 1446(b)(2)(A) (providing that only those defendants that have been "properly joined and served" must consent).

21.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446 because it is filed within 30 days of service upon Abbott.

## II.     DIVERSITY JURISDICTION EXISTS AS TO THE PROPERLY JOINED PARTIES

22.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action in which the properly joined parties are citizens of different states and the amount in controversy exceeds the sum of $75,000 for Plaintiff's claims, exclusive of costs and interest.

### A.     The Amount in Controversy Requirement Is Satisfied

23.     It is evident from the Complaint and the nature of Plaintiff's claimed injuries that the amount in controversy exceeds $75,000, exclusive of interests and costs.

24.     Under 28 U.S.C. § 1446(c)(2), "[i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—

> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks. . . (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded, and
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2)(A)-(B); Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub.L. 112-63, Dec. 7, 2011. The United States Court of Appeals for the Third Circuit has stated that "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

25.    "In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court." *Samuel–Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). In determining whether the jurisdictional amount has been satisfied, the Court can properly consider both actual and punitive damages claimed by the plaintiff. *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993).

26.    Here, Plaintiff demands a sum that exceeds the jurisdictional amount of $75,000. For each of the causes of action asserted against each Defendant in the Complaint, Plaintiff demands compensatory damages "in excess of $50,000," in addition to punitive damages "in excess of $50,000." Compl. ¶¶ 75(a), 75(d), 83(a), 83(d), 92(a), 92(d), 102(a), 102(d), 112(a), 112(d), 126(a), 126(d), 147(a), 147(d). Plaintiff also demands non-economic damages, lost income, out-of-pocket costs, lost earning capacity, medical costs, and attorney's fees, but does not plead a sum certain for such damages. Compl. ¶¶ 75(b)–(c), 75(f), 83(b)–(c), 83(f), 92(b)–(c), 92(f), 102(b)–(c), 102(f), 112(b)–(c), 112(f), 126(b)–(c), 126(f), 147(b)–(c), 147(f).

27.    In considering both the compensatory and punitive damages sought by Plaintiff, it is clear that she demands damages that exceed the jurisdictional threshold of $75,000 set forth by 28 U.S.C. § 1332(a).

**B.** **Complete Diversity of Citizenship Exists Between the Properly Joined Parties**

28.     This case is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(1). As explained below, all properly joined and served defendants are diverse from Plaintiff.

**1.** **Plaintiff Is A Citizen of New Jersey**

29.     Upon information and belief, at all times relevant hereto, Plaintiff is a resident and citizen of New Jersey. Compl. ¶ 3.

**2.** **Abbott Is A Citizen of Illinois**

30.     Abbott is now, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Illinois with its corporate headquarters in Lake County, Illinois.

**3.** **Mead Johnson Is A Citizen of Delaware and Indiana**

31.     Mead Johnson Nutritional Company is a wholly owned subsidiary of Reckitt Benckiser PLC and is now, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Indiana. It is thus a resident of those two states. Mead Johnson & Company, LLC is a limited liability company whose sole member is Mead Johnson Nutritional Company, and is therefore a resident of the States of Delaware and Indiana.

**4.** **The Hospital Defendants' Citizenship Must Be Disregarded**

32.     Defendant Pennsylvania Hospital is a non-profit corporation registered to do business in the Commonwealth of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania. Compl. ¶ 6.

33.     Defendant Penn Medicine is a non-profit corporation registered to do business in

the Commonwealth of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania. Compl. ¶ 7.

34.     Although the Hospital Defendants are citizens of Pennsylvania, they were not "properly joined" for the reasons set forth below. *See* U.S.C. § 1441(b). Thus, the Hospital Defendants' citizenship must be disregarded for the purposes of determining the propriety of removal.

> ### C.     The Hospital Defendants Were Fraudulently Joined And Their Citizenship Must Be Disregarded

35.     The Hospital Defendants' presence in this case does not defeat diversity jurisdiction, and does not prevent removal, because they were fraudulently joined.

36.     For this Court to exercise diversity jurisdiction over the case, all parties must be diverse. *See* 28 U.S.C. § 1446(b) (providing the procedure for removal based on diversity of citizenship); 28 U.S.C. § 1332(a) (granting federal courts original jurisdiction over all actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States). Plaintiff has attempted to take advantage of this procedural requirement by suing the Hospital Defendants, who are citizens of Pennsylvania, the forum state, to prevent removal to federal court.

37.     The so-called "forum defendant rule" of 28 U.S.C. § 1441 states that "[a] civil action otherwise removable solely on the basis of the jurisdiction . . .  may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). The Third Circuit, however, has stated that the requirement that the forum defendant be "'properly joined and served' addresses a specific problem — fraudulent joinder by a plaintiff." *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902

F.3d 147, 153 (3d Cir. 2018). Plaintiff here has fraudulently joined the Hospital Defendants in an attempt to prevent removal to federal court by operation of the forum defendant rule.

38.     "The party asserting jurisdiction bears the burden of showing the action is properly before the federal court." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005).

39.     In the Third Circuit, joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)), *cert. dismissed sub nom. American Standard v. Steel Valley Auth.*, 484 U.S. 1021 (1988)).

40.     In reviewing the alleged fraudulent joinder, the Court assumes as true all factual allegations of the complaint and resolves "any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (quoting *Boyer*, 913 F.2d at 111). However, a court may look beyond the complaint's allegations at "indicia" of fraudulent joinder. *See Abels*, 770 F.2d at 33. Specifically, the Third Circuit has stated that a district court is not precluded from "a limited consideration of reliable evidence that the defendant may proffer to support the removal," such as evidence "found in the record from prior proceedings" or "in other relevant matters that are properly subject to judicial notice." *Id.* at 220 (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998)).

1. **The Causes of Action Brought Against the Hospital Defendants Alone Fail As A Matter of Law**

41.     Plaintiff alleges only two causes of action against the Hospital Defendants: negligent failure to warn, Compl. ¶¶ 113–126 (Count VI) and negligent corporate liability of a healthcare provider, *id.* ¶¶ 127–147 (Count VII).

42.     Both counts should be dismissed because Plaintiff has not properly pleaded a claim against the Hospital Defendants. Under Pennsylvania law, "[t]o plead corporate negligence against a hospital, the plaintiff's complaint must include allegations that, if accepted as true, would prove that: (1) the hospital deviated from the standard of care; (2) the hospital had actual or constructive notice of the defects or procedures that created the harm; and (3) the hospital's act or omission was a substantial factor in bringing about the harm." *Kennedy v. Butler Memorial Hosp.*, 901 A.2d 1042, 1045 (Superior Ct. of Pa. 2006); *see also Thompson v. Nason Hospital*, 527 Pa. 330, 591 A.2d 703 (1991).

43.     In *Thompson*, the Supreme Court of Pennsylvania embraced four duties that hospitals owe to patients: (1) "a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment"; (2) "a duty to select and retain only competent physicians"; (3) "a duty to oversee all persons who practice medicine within its walls as to patient care"; and (4) "a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients." *Thompson*, 527 Pa. at 339–40, 591 A.2d at 707 (internal citations omitted).

44.     Here, Plaintiff has not alleged that the Hospital Defendants have breached a duty covered by any of the four categories recognized by the Supreme Court of Pennsylvania. Instead, she seeks to impose a new duty on the hospitals that is not recognized under Pennsylvania law: to  warn patients about the risks associated with products administered by physicians during the course of a patient's treatment. At bottom, this is an attempt to impose on the Hospital Defendants

a duty to obtain informed consent under the guise of a failure-to-warn claim and a corporate negligence claim. This has been tried before, and Pennsylvania courts have flatly rejected the practice.

45.     To start, Pennsylvania recognizes an informed consent claim only under a battery theory; it does not permit informed consent claims under any theory of negligence. *Montgomery v. Bazaz-Sehgal*, 568 Pa. 574, 585, 798 A.2d 742, 748 (2002). Informed consent claims therefore cannot be brought against hospitals: "In Pennsylvania, only surgeons who actually perform . . . operative procedures have the duty to warn patients of risks and thus obtain informed consent." *Gentzler v. Atlee*, 443 Pa. Super. 128, 660 A.2d 1378 (1995). Informed consent claims against hospitals are not permitted in Pennsylvania because a physician—not a hospital—is in the best position to advise a patient about the risks of a procedure or treatment. *Kelly v. Methodist Hosp.*, 444 Pa. Super. 427, 434, 664 A.2d 148, 151 (1995) (imposing a duty to obtain informed consent on hospitals "ignores the[] unique aspects of the physician-patient relationship" (internal quotations omitted)); *see* 40 P.S. § 1303.504 (imposing only a "Duty on Physicians" to "obtain informed consent" before certain procedures).

46.     Critically, claims seeking to impose a duty to warn upon a hospital "clearly attempt to impose upon a hospital duties which are every bit as extensive as the duty to obtain informed consent." *Id.* So regardless of how it is styled, a complaint that in effect seeks "to assert an informed consent cause of action based on negligence" must be rejected because "[s]uch a theory does not constitute a viable cause of action in Pennsylvania." *Id.*; *see Dowhouer v. Judson*, 45 Pa. D. & C.4th 172, 182 (Com. Pl. 2000) ("[T]he plain reading of plaintiffs' complaint indicates that plaintiffs are attempting to assert an informed consent cause of action based on negligence. This theory does not constitute a viable cause of action in Pennsylvania.").

47. Put differently, Plaintiff does not assert that the Hospital Defendants breached any duty that they owe under *Thompson*. She asserts only that the Hospital Defendants negligently failed to obtain informed consent. *Id.* But "*Thompson* does not . . . expose a hospital to corporate liability for failing to formulate certain policies relating to informed consent since mere negligence cannot satisfy the mental state requirement for a battery claim." *Gurevitz v. Piczon*, 1999 WL 1442424 (Pa. Ct. of Cmn. Pleas 1999) (citing, *inter alia*, *Kelly*, 444 Pa. Super. at 432–34, 664 A.2d at 150). And thus, "Pennsylvania law forbids a claim of corporate negligence against a hospital to be founded upon a theory that the hospital failed to ensure the patient's informed consent." *Tucker v. Cmty. Med. Ctr.*, 2003 PA Super 356, ¶ 16, 833 A.2d 217, 225 (2003).

48. Not only has a hospital's duty to warn been rejected under Pennsylvania law, but the Supreme Court of Pennsylvania has explained why: imposing such a duty to warn on hospitals "would do little in the way of providing an incentive to safety." *Cafazzo v. Cent. Med. Health Servs., Inc.*, 430 Pa. Super. 480, 486, 635 A.2d 151, 153–54 (1993), *aff'd*, 542 Pa. 526, 668 A.2d 521 (1995). *Cafazzo* reasoned that "a hospital not involved in the development or manufacture of the product is in no better position to prevent circulation of a defective product"—or to warn of its defects—than those who researched, developed, marketed, and sold the product. *Id.* Thus, *Cafazzo* held that even if a hospital *could* be considered a "seller" of an allegedly defective product used in medical care—though the court found it could not—strict liability would not apply because "imposing liability for a poorly designed or manufactured product on the hospitals and doctors who use them . . . is highly unlikely to effect changes" in product safety. *Id.* at 535, 668 A.2d at 526.

49. In addition, Plaintiff cannot contend that the Hospital Defendants are liable for failure to warn under a vicarious liability theory. First, Plaintiff did not plead that theory in her

Complaint. In any event, the Supreme Court of Pennsylvania also has recognized that hospitals are not liable for a failure to obtain informed consent under a theory of vicarious liability because it would be inappropriate to "interject" an element of control by a hospital into the "highly individualized and dynamic relationship" between physician and patient. *Valles v. Albert Einstein Med. Ctr.*, 569 Pa. 542, 554, 805 A.2d 1232, 1239 (2002).

50.     Second, even if Plaintiff *did* allege a vicarious liability theory—and even if a hospital could be vicariously liable for failing to warn—Pennsylvania law applies the doctrine of informed consent only to cases involving surgical or operative procedures because in cases not involving surgery, the underlying action "is no longer considered to be battery, but merely to be negligence." *Brown v. Mercy Fitzgerald Hosp.*, No. CIV.A.01CV2212, 2001 WL 1923042, at *3 (E.D. Pa. Oct. 1, 2001) (citing *Morgan v. MacPhail*, 704 A.2d 617, 619 (Pa. 1997)). Plaintiff is not alleging harm from failure to provide informed consent for a surgical procedure. Rather, she is alleging harm from the use of specialized preterm infant formulas. The underlying informed consent action for which Plaintiff seeks to hold the Hospital Defendants liable, therefore, would still sound in negligence and is still rejected by Pennsylvania law. *Id.*; *Kelly*, 444 Pa. Super. at 431, 664 A.2d at 150; *Shaw*, 439 Pa. Super. at 31, 653 A.2d at 15.

51.     The specific allegations in Plaintiff's Complaint only emphasize the point. She alleges, among other things, that the Hospital Defendants failed "to formulate, adopt, and enforce adequate rules and policies to instruct its healthcare professionals and medical staff on the information that should be provided to parents ***in order to make an informed choice*** about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk." Compl. ¶¶ 135(d), 142(e). But Plaintiff's attempt to impose such a duty on the Hospital Defendants already has been rejected under Pennsylvania law and ignores the "unique

aspects of the physician-patient relationship." *Kelly*, 444 Pa. Super. at 434, 664 A.2d at 151.

## 2.    Plaintiff Has No Real Intention To Prosecute the Hospital Defendants

52.    Plaintiff has fraudulently joined the Hospital Defendants as she does not have any real intention of pursuing her claims against them. The Hospital Defendants' citizenship as in-forum defendants should therefore be disregarded.

53.    The Court should look beyond the allegations contained in the Complaint to other indicia of fraudulent joinder. *See Abels*, 770 F.2d at 33. Here, the broader context of the current litigation against Abbott and Mead Johnson is decisive.

54.    This Court has previously looked to "generalized allegations" and the history of litigation to conclude that a distributor of a pharmaceutical drug was fraudulently joined in a products liability action to defeat diversity jurisdiction. *See In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 257 F. Supp. 3d 717, 721 (E.D. Pa. 2017). It should do the same here. It is clear from the Complaint that Plaintiff's general allegations are more concerned with the alleged risks inherent in the products manufactured and produced by Abbott and Mead Johnson than with the actions of the Hospital Defendants. All but seven paragraphs of Plaintiff's 148-paragraph Complaint concern the alleged actions or inactions of Abbott and Mead Johnson, rather than those of the Hospital Defendants. Even those factual allegations concerning the Hospital Defendants are largely focused on their relationship with Abbott and Mead Johnson, and in particular the sales representatives employed by Abbott and Mead Johnson.

55.    What is more, Plaintiff alleges only two claims against the Hospital Defendants and both are barred under Pennsylvania law. This shows that Plaintiff does not intend to pursue the

Hospital Defendants, but rather, she includes two specious theories of liability against them for the sole purpose of defeating diversity.

56.     It is apparent, given the hundreds of other cases filed by Plaintiff's counsel in connection with this litigation, that Plaintiff has no intention of pursuing claims against the Hospital Defendants and intends to pursue only the manufacturers. The citizenship of the Hospital Defendants as in-forum defendants should therefore be disregarded, and this Court should assume jurisdiction.

## CONCLUSION

57.     There is complete diversity amongst the properly joined parties, and this Notice of Removal is appropriate pursuant to 28 U.S.C. § 1441(b).

58.     Based on the foregoing, the state court action may be removed to this Court in accordance with the provisions of 28 U.S.C. §§ 1332 and 1441 *et. seq*. because this is a civil action pending within the jurisdiction of this Court; this action is between citizens of different states; and the amount in controversy exceeds $75,000, exclusive of interest and costs.

59.     No admission of fact, law, or liability is intended by this Notice of Removal, and Abbott expressly reserves all defenses, counterclaims, and rights otherwise available to it.

60.     Pursuant to 28 U.S.C. § 1446(d), Abbott will promptly file a Notice of Removal with the clerk of the state court where this lawsuit has been pending and will serve notice of the filing of this Notice of Removal on Plaintiff.

WHEREFORE, Abbott removes this action, now pending in the First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia County, Case ID No. 220302588, to this Court.

May 3, 2022                              Respectfully submitted,


                                         */s/ Samuel W. Silver*
                                         Samuel W. Silver (PA ID No. 56596)
                                         John R. Timmer (PA ID No. 89814)
                                         SCHNADER HARRISON SEGAL & LEWIS LLP
                                         1600 Market Street, Suite 3600
                                         Philadelphia, PA  19103-7286
                                         T: (215) 751-2309/2451
                                         F: (215) 751-2205
                                         ssilver@schnader.com
                                         jtimmer@schnader.com

                                         Kimberly A. Brown (PA ID No. 56200)
                                         JONES DAY
                                         500 Grant Street, Suite 4500
                                         Pittsburgh, PA 15219
                                         T: (412) 394-7995
                                         F: (412) 394-7959
                                         kabrown@jonesday.com

                                         *Counsel for Abbott Laboratories*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 3, 2022, I caused the foregoing to be electronically filed with

the Clerk of the Court, and to be furnished by U.S. Mail and e-mail to the following:

| | |
|---|---|
| Tracy Finken<br>ANAPOL WEISS<br>One Logan Square<br>130 N. 18th St., Suite 1600<br>Philadelphia, PA 19103<br>(205) 735-0773<br>tfinken@anapolweiss.com<br>*Counsel for Plaintiff*<br><br>Ashley Keller<br>KELLER POSTMAN LLC<br>150 N. Riverside Plaza, Suite 4100<br>Chicago, Illinois 60606<br>(312) 741-5220<br>ack@kellerpostman.com<br>*Counsel for Plaintiff*<br><br>Alex Walsh<br>WALSH LAW PLLC<br>1050 Connecticut Ave, NW, Suite 500<br>Washington, D.C. 20036<br>(202) 780-4127<br>awalsh@alexwalshlaw.com<br>*Counsel for Plaintiff* | James A. Young<br>Richard S. Margulies<br>BURNS WHITE LLC<br>1880 John F. Kennedy Boulevard, 10th Floor<br>Philadelphia, PA 19103<br>215-587-1625/1628<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br><br>*Counsel for Defendants The Pennsylvania*<br>*Hospital of the University of Pennsylvania*<br>*Health System d/b/a Pennsylvania Hospital*<br>*and The Trustees of the University of*<br>*Pennsylvania d/b/a Penn Medicine*<br><br>Defendant Mead Johnson & Company, LLC<br>Defendant Mead Johnson Nutrition Company<br>Illinois Corporation Service Co.<br>801 Adlai Stevenson Drive<br>Springfield, Il 62703<br><br>*By U.S. Mail Only* |

/s/ John R. Timmer
John R. Timmer (PA ID No. 89814)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286
T: (215) 751-2309/2451
F: (215) 751-2205
jtimmer@schnader.com

*Counsel for Abbott Laboratories*